IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL DI SEVERIA and )
RONALD C. DEVINE, )
 )
       Plaintiffs, )
 )
v. ) Civil Action No. 3:22-cv-337–HEH
 )
FRONT ROW MOTORSPORTS, INC., )
 )
       Defendant. )

### MEMORANDUM OPINION
### (Transferring Venue)

On May 5, 2022, Defendant Front Row Motorsports, Inc. ("Front Row") filed its Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Transfer or Stay (the "Motion"). (Mot., ECF No. 3.) The parties filed memoranda supporting their respective positions. The Court heard oral argument on the matter at a hearing on June 7, 2022. For the reasons stated herein, the Court, in its discretion, will grant the Motion and transfer the case to the Western District of North Carolina.

Michael Di Severia and Ronald C. Devine (collectively, "Plaintiffs") filed the instant action seeking a declaration that they have no liability to Front Row under an Indemnity Agreement they entered into. (Compl. ¶ 45, ECF No. 1-1 at 2–15.)[1] Plaintiffs are members of separate groups which own a combined 80% stake in BK Racing, a

---

[1] ECF No. 1-1 includes the Plaintiffs' Complaint and accompanying exhibits. The Court will cite to the accompanying exhibits by name and indicate the page range within ECF No. 1-1 for each.

professional stock car racing team. (*Id.* ¶¶ 11–14.) In 2016, NASCAR created a system consisting of Charter Member Agreements ("Charters" or "CMA") which, analogous to franchises, allow teams with charters to automatically participate in Cup Series races. (*Id.* ¶¶ 17–18.) BK Racing held charters for CMA 32 and CMA 33. (*Id.*) In May 2016, BK Racing entered into a Security Agreement with Atlantic Union Bank ("AUB") granting a security interest in car number 83, which at the time raced under CMA 33. (*Id.* ¶ 19.) On December 6, 2016, BK Racing, with Plaintiff Devine as its "Control Person," entered into an agreement to sell CMA 33 to Front Row for $2,000,000 in two $1,000,000 installments. (*Id.* ¶¶ 26–28.) In mid-January 2017, Front Row learned of AUB's potential claim to CMA 33 and sought indemnification from "'the partners at BK Racing' against future claims relating to CMA 33." (*Id.* ¶¶ 33–35.) In response, Plaintiffs signed the Indemnity Agreement with Front Row on January 24, 2017. (*Id.* ¶ 36.)

On March 31, 2020, AUB sued BK Racing and Front Row in the Circuit Court for the City of Richmond, Virginia to enforce their security interest in CMA 33 (the "First Virginia Suit"). (Def.'s Mem. Supp. at 6–7, ECF No. 4.) Shortly after, Front Row filed a third-party complaint against Plaintiffs, Di Severia and Devine, seeking "indemnification against AUB's claims, pursuant to the Indemnity Agreement." (Compl. ¶ 41.) Front Row settled with AUB and subsequently nonsuited their third-party complaint against Plaintiffs. (Pls.' Mem. Opp'n at 5, ECF No. 8.)

Two years later, on March 30, 2022, Plaintiffs filed the instant action in the Circuit Court for the City of Richmond seeking a declaratory judgment absolving Plaintiffs of

2

any liability to Front Row under the Indemnity Agreement.[2] (Compl. ¶ 45.) Two days later, on April 1, 2022, Front Row filed suit in the Western District of North Carolina seeking to enforce the Indemnity Agreement against Plaintiffs (the "North Carolina Suit").[3] (N.C. Compl. at 15, ECF No. 4-2.) Front Row subsequently filed the instant Motion.

Pursuant to 28 U.S.C § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The movant bears the burden of demonstrating venue is proper elsewhere; however, the decision to transfer a case rests in the district court's sound discretion. *Koh v. Microtek Int'l., Inc.*, 250 F. Supp. 2d 627, 630, 633 (E.D. Va. 2003). The Court retains discretion under § 1404(a) "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 715 (E.D. Va. 2005) (quoting *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Transfer under § 1404(a) requires a two-step inquiry: "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh*, 250 F. Supp. 2d at 630.

---

[2] Front Row removed the action to this Court on April 28, 2022. (Notice of Removal, ECF No. 1.)

[3] *Front Row Motorsports, Inc. v. Di Severia*, No. 3:22-cv-138 (W.D.N.C. filed April 1, 2022).

When there is only one defendant, venue is generally proper in any district in which the defendant resides or where a substantial part of the events or omissions underpinning the lawsuit occurred. 28 U.S.C. § 1391(b). For venue purposes, corporations reside in every district where personal jurisdiction over them exists.[4] *Id.* § 1391(c). North Carolina's long arm statute extends personal jurisdiction to any dispute that "arises out of a promise, made anywhere to the plaintiff . . . by the defendant to perform services within [North Carolina] or to pay for services to be performed in [North Carolina] by the plaintiff." N.C. Gen. Stat. Ann. § 1-75.4(5)(a) (West 2008); *see also id.* § 1-75.4(5)(d) ("Relates to goods, documents of title, or other things of value shipped from [North Carolina] by the plaintiff to the defendant on his order or direction."). Although, Front Row is a Tennessee corporation, it purchased CMA 33 from BK Racing, a North Carolina corporation headquartered in Charlotte, within the Western District of North Carolina. (Compl. ¶ 4.) Further, the Indemnity Agreement with Plaintiffs, which is governed by North Carolina law, was an integral part of that transaction and was delivered in North Carolina. (*Id.* ¶ 9.) Thus, Front Row's actions in purchasing CMA 33 and entering into the Indemnity Agreement involved multiple contacts with North Carolina and falls within North Carolina's long arm statute.

These contacts also meet the constitutional minimum necessary to create personal jurisdiction, and thus, personal jurisdiction over Front Row exists in North Carolina. *See*

---

[4] Under the Indemnity Agreement, only Plaintiffs, the indemnitors, consented to the jurisdiction of North Carolina. (Indem. Agree. ¶ 9, ECF No. 1-1 at 16–22.) Thus, personal jurisdiction does not exist via a consent theory.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020). The Court further notes that the parties have never seriously argued that personal jurisdiction would not exist over Front Row in North Carolina. As such, Plaintiffs were fully capable of bringing the instant action in the Western District of North Carolina since venue and personal jurisdiction were proper.[5]

After establishing that the claims might have been brought in the transferee forum, the Court must balance several factors in answering the second inquiry, including, "(1) the plaintiff's choice of venue, (2) witness convenience and access, (3) the convenience of the parties, and (4) the interest of justice." *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Usually, the plaintiff's choice of forum is afforded significant weight, particularly when the forum closely relates to the cause of action. *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 3d 991, 995 (E.D. Va. 2011). However, "[t]he level of deference to a plaintiff's forum choice 'varies with the significance of the contacts between the venue chosen by [the] plaintiff and the underlying cause of action.'" *Id.* (quoting *Bd. of Trs. v. Baylor Heating & Cooling Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988)). The less connected the chosen forum is with the cause of action, the less weight is given to a plaintiff's choice. *Id.*

---

[5] There must also be subject matter jurisdiction. Here, diversity jurisdiction exists over Plaintiffs' claims both in the Eastern District of Virginia and in the Western District of North Carolina. 28 U.S.C. § 1332.

5

Here, Plaintiffs filed for a declaratory judgment in the Circuit Court for the City of Richmond. They admitted in their briefs that their reason for suing in Virginia was "for the obvious reason that this litigation should end where it began," and that they "prefer to litigate in the locality where they were sued to begin with." (Pls.' Mem. Opp'n at 11.) Nowhere do Plaintiffs claim they prefer Virginia because it is the most pertinent forum to litigate their cause of action, and, beyond being the location of the First Virginia Suit, their cause of action has little connection to the Commonwealth. In fact, Front Row purchased CMA 33 from BK Racing, a professional stock racing team based out of Charlotte, North Carolina. (Compl. ¶¶ 11, 27.) Upon learning of AUB's potential claim to CMA 33, Front Row conditioned the completion of the transaction on Plaintiffs entering the Indemnity Agreement. (Compl. ¶ 35.) Moreover, the Indemnity Agreement required Front Row to complete their transaction of purchasing CMA 33 from BK Racing and fulfil their existing contractual obligations to pay the remaining $1,000,000. (Indem. Agree. ¶ 2.) Thus, the Indemnity Agreement is a continuation of the transaction and the operative facts of the suit take place in North Carolina. The Indemnity Agreement states that it "is delivered in the State of North Carolina" and is "deemed to be a contract made under and governed by the internal laws of North Carolina." (Indem. Agree. ¶ 9.) Additionally, the Indemnity Agreement insured Front Row against actions brought against it relating to the sale of CMA 33 with BK Racing, a North Carolina corporation. (Compl. ¶¶ 11, 37.)

6

Inevitably, some aspects of the First Virginia Suit would be at issue and tied to Virginia, but the gravamen of this dispute originated in North Carolina.[6] Consequently, because Virginia is less connected with the cause of action, Plaintiffs' choice of forum deserves some, but not substantial weight. *See Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002) (citing *Heyco, Inc. v. Heyman*, 636 F. Supp. 1545, 1551 (S.D.N.Y. 1986) (holding the court should consider whether the operative facts of a claim have a material connection with the chosen forum)).

Next, the Court assesses the convenience and access to witnesses. The parties agree that the conveniences and access to witnesses are neutral in this case. (Pls.' Mem. Opp'n at 11.) At the hearing, Plaintiffs conceded that there will be witnesses from Virginia, North Carolina, and South Carolina. Front Row likewise identified potential witnesses from among the same states, and potentially Florida. (Def.'s Mem. Supp. at 14–15.) The Court agrees that the convenience and access to witnesses is generally neutral.

As to the convenience of the parties, "when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 668 (E.D. Va. 2010) (internal citations omitted). Furthermore, "transfer is not appropriate where it will only serve to shift the balance of inconvenience from one party to the other." *Id.* Plaintiffs are both residents of

---

[6] Plaintiffs contend the Security Agreement is governed under Virginia law. The Court addresses this issue in-depth later. *See infra* note 10.

7

Virginia and have expressed their clear desire to litigate in Virginia. (Compl. ¶¶ 1–2.) Front Row is a Tennessee corporation, but, as the movant, states that North Carolina is more convenient. (Def.'s Mem. Supp. at 14.) Importantly, under their Indemnity Agreement, Plaintiffs consented to jurisdiction and agreed not to assert that North Carolina is an inconvenient forum in any North Carolina suit. (Indem. Agree. ¶ 9.) Thus, it appears to the Court that transferring the case is not a large inconvenience to either party. Therefore, the convenience to the parties alone is unpersuasive either way.

Finally, the interest of justice analysis encompasses remaining factors including "circumstances such as 'the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment.'" *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939–40 (E.D. Va. 2001) (quoting *Baylor Heating & Cooling Air Conditioning, Inc.*, 702 F. Supp. at 1260). The interest of justice, here, weighs strongly in favor of transfer.

The pendency of the current parallel action in the Western District of North Carolina greatly weighs towards transfer. While the North Carolina Suit was filed two days after the instant action, the case involves issues of enforcing the Indemnity Agreement.[7] (N.C. Compl. at 15.) Most importantly, the North Carolina Suit includes all parties and signatories to the Indemnity Agreement which the immediate case does not.

---

[7] Since Plaintiffs filed their lawsuit first, the first-to-file rule would usually apply to the exclusion of the subsequently filed suit. *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 (4th Cir. 1982). However, this rule "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem'l. Hosp. v.*

Plaintiffs filed the immediate action "to determine the parties' respective rights under the Indemnity Agreement." (Compl. ¶ 10.) However, as Front Row highlights, Mr. Robert Jenkins, a party to the Indemnity Agreement, is not a party to this action. (Def.'s Mem. Supp. at 16.) "[The Court] recognize[s] that all interested parties should be joined in a declaratory judgment action whenever possible and that a declaratory judgment should not be entered unless it disposes of a controversy and serves a useful purpose." *Pa. Nat'l Mut. Cas. Ins. v. Newman*, Case No. 7:18-cv-00469, 2020 WL 1539290, at *3 (W.D. Va. Mar. 31, 2020) (quoting *State Farm Mut. Auto. Ins. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 296 (10th Cir. 1975)). Thus, while the absence of Mr. Jenkins does not preclude this Court from addressing the rights between Plaintiffs and Front Row, it weighs heavily in favor of transferring the case to a forum where a judgment can be final against *all* signatories and parties to the Indemnity Agreement.[8]

Furthermore, district courts use their discretion "in deciding whether or not to entertain declaratory judgment claims." *Allied-Gen. Nuclear Servs.*, 675 F.2d at 611. In doing so, "a federal court should analyze whether its resolution of the declaratory action

---

*Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983). In the analysis on whether to apply such rule, courts are to consider factors including whether there was a "race to the courthouse" and the balance of convenience. *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 288 (E.D. Va. 2019). Furthermore, courts are apprehensive to exercise their discretion over declaratory judgments particularly when the circumstances are suggestive of potential anticipatory filing. *Great W. Cas. Co. v. Packaging Corp. of Am.*, 444 F. Supp. 3d 664, 670–71 (M.D.N.C. 2020). Considering these principles in this case, the first-to-file rule should not block transferring the case to the Western District of North Carolina.

[8] Front Row goes further and contends that Mr. Jenkins is an indispensable party. (Def.'s Mem. Supp. at 16.) However, this Court finds such determination beyond the necessary scope of the present inquiry and declines to exercise its judgment on the matter.

9

will settle all aspects of the legal controversy." *Mitcheson v. Harris*, 95 F.2d 235, 239 (4th Cir. 1992). The instant action seeks declaratory judgment determining whether Plaintiffs are liable to Front Row. If the Court were to declare that Plaintiffs do have a duty to indemnify Front Row, the North Carolina Suit may have to continue in order to determine related issues.[9] For example, the North Carolina Suit may have to determine a damages award based on the Indemnity Agreement or Plaintiffs may have other defenses they could assert. Thus, the immediate case might settle many aspects of the controversy but will not necessarily settle all aspects. The broader scope of the North Carolina litigation weighs heavily in favor of transferring the instant case there.

Courts also give significant weight to which law will govern. *BHP Intern. Inv. v. OnLine Exchange, Inc.*, 105 F. Supp. 2d 493, 499 (E.D. Va. 2000). The parties claim this action would involve issues of both North Carolina and Virginia law. The Security Agreement between AUB and Plaintiffs was formed and governed by Virginia law,[10] while the Indemnity Agreement between Plaintiffs and Front Row is governed by North Carolina law. (Pls.' Mem. Opp'n at 11; Def.'s Mem. Supp. at 15.) In this case, Plaintiffs

---

[9] Front Row could possibly assert counterclaims that would address some tangential issues. However, it is unsettled whether declaratory judgments can spark compulsory counterclaims. *Compare Allan Block Corp. v. Cnty. Materials Corp.*, 512 F.3d 912, 916–17 (7th Cir. 2008), *with Waste Mgt., Inc. v. Great Divide Ins.*, Case No. 3:17-cv-60, 2017 WL 9479196, at *4–5 (E.D. Va. June 30, 2017).

[10] As Plaintiffs note in their brief, there is an issue of conflicting choice of law provisions in the various Bank documents. The November Security Agreement, attached by Plaintiffs to their Complaint, dictates North Carolina law governs in part, while the May Security Agreement, attached by AUB in the First Virginia Suit, dictates only Virginia law applied. (Pls.' Mem. Supp. at 11, n.3.) It is unclear which Agreement governs this dispute and whether it is particularly relevant.

10

specifically ask this Court to find "as a matter of fact and law, that the Plaintiffs have no liability to Front Row under the *Indemnity Agreement*." (Compl. at 15 (emphasis added).) Thus, despite some tangential dispute over the Security Agreement and Virginia law, the crux of the case in this Court centers around the governance of the Indemnity Agreement under North Carolina law.

Next, docket considerations may slightly weigh in favor of retaining this case in the Eastern District of Virginia. According to exhibits provided by counsel, in the Eastern District of Virginia and the Western District of North Carolina the median time between filing an action and its ultimate disposition is 6.3 and 9 months, respectively. (ECF No. 4-4.) However, "although somewhat relevant, docket conditions generally receive minor consideration and . . . cannot be the primary reason for retaining venue." *JTH Tax, Inc.*, 482 F. Supp. 2d at 739. Thus, this Court gives docket considerations minimal weight.[11]

Balancing the four factors, Plaintiffs' choice of forum warrant minimal weight in comparison to the interest of justice. The North Carolina litigation more widely addresses the merits of the issues and includes every party subject to the Indemnity Agreement. Moreover, while some issues of Virginia law might be relevant, the Indemnity Agreement was formed under North Carolina law and Plaintiffs' Complaint alleges disputes governed by North Carolina law. (Compl. ¶¶ 89–90.)

---

[11] The final factors in the interests of justice analysis are "access to premises that might have to be viewed, the possibility of unfair trial . . .[or] the possibility of harassment." *See Acterna, L.L.C.*, 129 F. Supp. 2d at 939–40. The Court is unaware of any issues of that kind that might factor in here.

11

Therefore, this Court finds that Plaintiffs' claims might have been brought in the Western District of North Carolina and the interests of justice and convenience of the parties and witnesses justify transfer to that jurisdiction.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: June 30, 2022
Richmond, Virginia